## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| Downtown Restaurant, Inc.<br><br>     Plaintiff<br><br>v.<br><br>Tasty Tales LLC,<br>Lalith Kumar Kandepi,<br>Suresh Babu Cherukumalili,<br>Sashidhar Kovi.<br><br>     Defendants | Civil Action No. 4:25-cv-49<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Downtown Restaurant, Inc.  ("Plaintiff"), by and through its attorneys, Scale LLP and Brand Counsel, P.C., for its Complaint against defendants Tasty Tales LLC, Lalith Kumar Kandepi, Suresh Babu Cherukumalili, Sashidhar Kovi ("Defendants"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

### PRELIMINARY STATEMENT

1.  This is an action for infringement of Plaintiff's famous federally-registered trademark BADMAASH under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); for dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), for cybersquatting under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d); and for substantial and related claims of trademark infringement, trademark dilution, and unfair competition under the statutory and common laws of the State of Texas, all arising from the Defendants'

unauthorized use of the mark BADMAASH in connection with the marketing, advertising, promotion, offering for sale, and/or sale of Defendants' services related to operating a restaurant serving Indian cuisine.

2.      Plaintiff seeks injunctive and monetary relief.

## JURISDICTION

3.      This court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332(a), and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

## VENUE

4.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendants Tasty Tales LLC and Lalith Kumar Kandepi reside in this district, 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district, 28 U.S.C. § 1391(b)(2), in that a substantial part of property that is the subject of the action is situated in this district, and 28 U.S.C. § 1391(b)(3), in that Defendants Tasty Tales LLC and Lalith Kumar Kandepi are subject to personal jurisdiction in this district with respect to this action, and there is no other district in which the action may otherwise be brought.

## PARTIES

5.      Plaintiff Downtown Restaurant, Inc. is a corporation that is incorporated in the state of California and has its principal place of business in Los Angeles, California. Plaintiff is a famous family-run Indian restaurant in Los Angeles, serving a mix of both classic and modern Indian dishes.

6.    Upon information and belief, Defendant Tasty Tales LLC is a limited liability company formed under the laws of Texas with a registered office street address at 1076 Echo Bend Court, Frisco, Texas. Upon information and belief, Defendant Tasty Tales LLC has three (3) managers: Lalith Kumar Kandepi is a citizen of Texas; Suresh Babu Cherukumalili is a citizen of Minnesota; and Sashhidar Kovi is a citizen of Minnesota. Upon information and belief, Defendants have operated an Indian restaurant at 3000 Northside Blvd #900, Richardson, Texas 75080 since November 15, 2024.

**FACTS**

A.  Plaintiff and Its Badmaash Mark

7.    Plaintiff is a California corporation that operates two restaurant locations in California and sells various food goods online to customers nationwide via its website at www.badmaashla.com. The restaurant has earned recognition and accolades from prestigious outlets across the nation, like the Michelin Guide, James Beard House, Food & Wine Magazine, Los Angeles Times, The New York Times, LA Magazine, Business Insider, GOOP, Forbes, Phoenix Mag, Arizona Foodie Mag, Sandwich Magazine, Luxurious Magazine, House of Aeiou, PBS Migrant Kitchen, and many others. BADMAASH has also collaborated with renowned chef Wolfgang Puck, a globally recognized chef and restaurateur. USA Today's spotlight article on the restaurant is titled "Badmaash is one of the best restaurants in Los Angeles." Additionally, Los Angeles Drinks Guide called Plaintiff one of the best Indian restaurants in Los Angeles. Plaintiff also organized and/or attended pop-ups in London, United Kingdom and master chef classes in India.

8.    Plaintiff is the owner of valid and subsisting United States Service Marks Registration Nos. 4759879 and 4768150, and Trademark Registration No. 6421577 on the

Principal Register in the United States Patent and Trademark Office for the mark "BADMAASH" (hereinafter "BADMAASH Mark") for *Bar and restaurant services; Pubs; Restaurant and bar services; Restaurant and bar services, including restaurant carryout services; Restaurant services; Restaurant services featuring casual and traditional Indian flavors; Restaurant services, including sit-down service of food and take-out restaurant services* and *Edible oils; Eggs; Fish, preserved; Jellies, jams; Meat; Meat and meat extracts; Milk products excluding ice cream, ice milk and frozen yogurt; Preserved, frozen, dried and cooked fruits and vegetables,* and *Coffee; Spices; Tea.* Attached as <u>Exhibit 1</u> are true and correct copies of the prior-filed application, registration certificates and maintenance records for the BADMAASH Marks, which were issued by the United States Patent and Trademark Office ("USPTO") on June 23, 2015, July 7, 2015, and July 13, 2021, respectively.

9.    Plaintiff has used the BADMAASH Mark in commerce throughout the United States continuously since May 1, 2013, in connection with the provision, offering for sale, sale, marketing, advertising, and promotion of various restaurant services. Attached hereto as <u>Exhibit 2</u> are copies representative samples of websites, social media accounts, articles and menus showing Plaintiff's use of the BADMAASH Mark in connection with these services.

10.    Additionally, Plaintiff has used the BADMAASH Mark in commerce throughout the United States continuously since August 21, 2020, in connection with the provision, offering for sale, sale, marketing, advertising, and promotion of sales of various food goods. Attached hereto as <u>Exhibit 2</u> are copies representative samples of websites, social media accounts, articles and receipts showing Plaintiff's use of the BADMAASH Mark in connection with these goods.

11.     As a result of its widespread, continuous, and exclusive use of the BADMAASH Mark to identify its goods and services and Plaintiff as their source, Plaintiff owns valid and subsisting federal statutory and common law rights to the BADMAASH Mark.

12.     Plaintiff's BADMAASH Mark is distinctive to both the consuming public and Plaintiff's trade.

13.     Plaintiff has expended substantial time, money, and resources marketing, advertising, and promoting the goods and services sold under the BADMAASH Mark including through Plaintiff's marketing, advertising and promotional efforts and channels for goods or services under the BADMAASH Mark. During the period from May 1, 2013 to present alone, Plaintiff has expended nearly Five Million US Dollars ($5M) on the development, marketing, advertising, and promotion of the goods and services sold under the BADMAASH Mark.

14.     Plaintiff provides and sells the goods and services under the BADMAASH Mark in its two Los Angeles locations, via takeout services and online. Plaintiff is in the process of opening its third location in Venice, CA.

15.     Plaintiff offers and sells its goods and services under its BADMAASH Mark to consumers from all states in the United States and international visitors.

16.     The good and services Plaintiff offers under the BADMAASH Mark are of high quality and have been recognized by many food enthusiasts, chefs, experts and critics.

17.     As a result of Plaintiff's expenditures and efforts, the BADMAASH Mark has come to signify the high quality of the good and services designated by the BADMAASH Mark, and acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiff.

18.     Plaintiff's BADMAASH Mark and the goods and services offered thereunder have received significant unsolicited coverage in various media, including Life & Thyme, Michelin Guide, Eater, Discover Los Angeles, Infatuation, PBS SoCal, Condé Nast Traveler, Taste Cooking, In the Loup, and Fine Dining Lovers, among others.

19.     As a result of its distinctiveness and widespread use and promotion throughout the United States, Plaintiff's BADMAASH Mark is a famous trademark within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c), and became famous prior to the acts of the Defendants alleged herein.

B.   Defendants' Unlawful Activities

20.     Upon information and belief, Defendants are engaged in operating a restaurant called BADMAASH in Richardson, Texas. Similarly to Plaintiff's restaurant, the Defendants' establishment serves Indian cuisine.

21.     Without Plaintiff's authorization, and upon information and belief, beginning after Plaintiff acquired protectable exclusive rights in its BADMAASH Mark, Defendants adopted and began using a mark identical to Plaintiff's BADMAASH Mark (hereinafter, the "Infringing Mark") in US commerce.

22.     The Infringing Mark adopted and used by Defendants is identical to Plaintiff's BADMAASH Mark and identifies identical services.

23.     Upon information and belief, Defendants have been engaged in the provision, advertising, promotion, offering for sale, and sale of Indian restaurant services using the Infringing Mark in Richardson, Texas. Attached hereto as Exhibit 3 are true and correct copies of

representative website, social media accounts and advertising platforms showing Defendants' use of the Infringing Mark.

24.     Upon information and belief, the services Defendants have provided, marketed, advertised, promoted, offered for sale, and sold under the Infringing Mark are identical to the services offered by Plaintiff.

25.     Upon information and belief, Defendants have marketed, advertised, promoted, offered for sale, and sold its services under the Infringing Mark through identical platforms offering restaurant reviews such as Yelp, Facebook and Instagram.

26.     Upon information and belief, Defendants have marketed, advertised, and promoted its services under the Infringing Mark through its website, Instagram and Facebook.

27.     Upon information and belief, Defendants offer and sell its services under the Infringing Mark to consumers in the United States as well as international visitors.

28.     Upon information and belief, the services Defendants offer under the Infringing Mark are of subpar quality based on the online reviews.

29.     On October 17, 2024, Plaintiff's counsel sent a cease-and-desist letter to Defendants objecting to Defendants' use of the Infringing Mark. Attached hereto as Exhibit 4 is a true and correct copy of Plaintiff's counsel's October 17, 2024 cease and desist letter to Defendants.

30.     Defendants failed to comply with the demands set out in the October 17, 2024 cease and desist letter.

31.     Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' services and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' services originate from, are associated or affiliated with, or otherwise authorized by Plaintiff.

32.     Defendants' infringing acts as alleged herein have resulted in actual confusion as evidenced by text messages received by Plaintiff asking them whether they opened a restaurant in Texas. Attached hereto as Exhibit 5 is a true and correct copy of multiple messages received by Plaintiff evidencing actual confusion.

33.     Upon information and belief, Defendants' acts are willful with the deliberate intent to trade on the goodwill of Plaintiff's BADMAASH Mark, cause confusion and deception in the marketplace, and divert potential sales of Plaintiff's services to the Defendants.

34.     Defendants' acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

**COUNT ONE (Federal Trademark Infringement)**

35.     Plaintiff repeats and realleges paragraphs 1 through 34 hereof, as if fully set forth herein.

36.     Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that

Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff. Defendants' conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

37.    Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the BADMAASH Mark and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

38.    Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

39.    Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**COUNT TWO (Federal Unfair Competition)**

40.    Plaintiff repeats and realleges paragraphs 1 through 39 hereof, as if fully set forth herein.

41.    Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that

Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

42.     Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

43.     Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

44.     Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

45.     Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

46.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT THREE (Federal Trademark Dilution)

47.     Plaintiff repeats and realleges paragraphs 1 through 46 hereof, as if fully set forth herein.

48.     Plaintiff's BADMAASH Mark is distinctive and a "famous mark" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

49.     Plaintiff's BADMAASH Mark became distinctive and famous prior to the Defendants' acts as alleged herein.

50.     Defendants' acts as alleged herein have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of Plaintiff's famous BADMAASH Mark.

51.     Defendants' acts as alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish Plaintiff's BADMAASH Mark by undermining and damaging the valuable goodwill associated therewith.

52.     Defendants' acts as alleged herein are intentional and willful in violation of Section 43(c)(1) of the Lanham Act, and have already caused Plaintiff irreparable damage and will, unless enjoined, continue to so damage Plaintiff, which has no adequate remedy at law.

53.     Plaintiff is entitled to, among other relief, an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

## COUNT FOUR (Federal Cybersquatting)

54.     Plaintiff repeats and realleges paragraphs 1 through 53 hereof, as if fully set forth herein.

55.     Upon information and belief, on or about October 1, 2024, Defendants registered the domain name www.badmaashtx.com (the "Infringing Domain Name") with the registrar GoDaddy Inc. (the "Registrar"). Defendants are currently the registrant of the Infringing Domain Name. Attached hereto as Exhibit 6 is a true and correct copy of the WHOIS record for the Infringing Domain Name as of January 13, 2025.

56.     Although the WHOIS record does not disclose the identity of the domain name registrant, Defendants currently promote their business via a website at this domain (hereinafter, the "Website"). Exhibit 3.

57.     The Infringing Domain Name is nearly identical to, confusingly similar to, and dilutive of the BADMAASH Mark, which was distinctive and famous when Defendants registered the Infringing Domain Name. Upon information and belief, Defendants were aware of Plaintiff's rights in the BADMAASH Mark when they selected and registered the Infringing Domain Name, and knowingly and intentionally registered the Infringing Domain Name because of its similarity to the BADMAASH Mark. Defendants merely changed the final two letters of Plaintiff's domain name, badmaash**la**.com, to direct traffic to its Texas location.

58.     Without Plaintiff's authorization and, upon information and belief, beginning after Plaintiff acquired protectable exclusive rights in the BADMAASH Mark and after the BADMAASH Mark became famous, Defendants posted a live website at the Infringing Domain Name. Defendants' Website remains active as of the filing of this complaint.

59.    Upon information and belief, Defendants used the Infringing Domain Name, which is confusingly similar to and dilutive of Plaintiff's famous BADMAASH Mark, to divert internet users looking for Plaintiff's website to Defendants' Website.

60.    Because the Infringing Domain Name is confusingly similar to the BADMAASH Mark, and Defendants' Website promotes and depicts goods and services that are identical to Plaintiff's goods and services under the BADMAASH Mark, consumers are likely to be confused into thinking that Plaintiff authorized, approved, or is affiliated or connected with Defendants' Website and the goods or services promoted on the site, when that is not the case.

61.    Due to the similarity of the Infringing Domain Name and Plaintiff's famous and distinctive BADMAASH Mark, consumers are likely to associate the Infringing Domain Name with Plaintiff's mark, impairing the distinctiveness of Plaintiff's BADMAASH Mark. Upon information and belief, Defendants intended its use of an Infringing Domain Name so similar to Plaintiff's famous and distinctive BADMAASH Mark to cause consumers to associate the Infringing Domain Name with the BADMAASH Mark.

62.    Upon information and belief, Defendants' acts alleged herein are willful, with the deliberate intent to trade on the goodwill of Plaintiff's BADMAASH Mark, cause confusion and deception online and in the marketplace, divert internet users looking for Plaintiff's website or Plaintiff's goods or services under the BADMAASH Mark to Defendants' Website, and divert potential sales of Plaintiff's goods or services to the Defendants.

63.    Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

64.    Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C), including, among other injunctive relief, transfer of the Infringing Domain Name to Plaintiff.

65.    Plaintiff is further entitled to recover its damages and Defendants' profits, enhanced as the court deems appropriate and equitable, in amounts to be proven at trial, pursuant to 15 U.S.C. § 1117(a). Alternatively, Plaintiff is entitled to maximum statutory damages in the amount of $100,000 for the Infringing Domain Name pursuant to 15 U.S.C. § 1117(d).

66.    Plaintiff is further entitled to recover its attorneys' fees and costs, together with prejudgment and post-judgment interest.

## COUNT FIVE (Texas Common Law Trademark Infringement)

67.    Plaintiff repeats and realleges paragraphs 1 through 66 hereof, as if fully set forth herein.

68.    Defendants' infringing use violates Texas common law.

69.    Plaintiff has valid and legally protected marks, which are registered in the United States Patent and Trademark Office, and is the senior user of those marks. Defendants' adoption and infringing use of the BADMAASH Mark in commerce, in connection with restaurant-related goods and services, is likely to cause confusion as to the affiliation, connection, or association of those goods and services with Plaintiff.

70.    Defendants' unlawful conduct has caused and will continue to cause irreparable damage to Plaintiff, for which Plaintiff has no adequate remedy at law. Unless enjoined,

Defendants will continue the unlawful conduct, further injuring Plaintiff and confusing the public.

## COUNT SIX (Texas Trademark Dilution)

71.     Plaintiff repeats and realleges paragraphs 1 through 70 hereof, as if fully set forth herein.

72.     The BADMAASH Mark is both famous and distinctive in Texas. The BADMAASH Mark is distinctive such that consumers recognize that goods and services marketed under the BADMAASH Mark originate with, or are approved or endorsed by, Plaintiff. Defendants knowingly and willfully began using in commerce the business name Badmaash after Plaintiff's BADMAASH Mark had become famous in Texas.

73.     Defendants' unlawful acts have lessened the capacity of Plaintiff's BADMAASH Mark to identify and distinguish the products and services Plaintiff provides under those marks. Defendants have diluted the BADMAASH Mark distinctive quality in violation of Tex. Bus. & Com. Code § 16.103.

74.     On information and belief, Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

75.     Defendants' violation of Texas law has caused and will continue to cause irreparable damage to Plaintiff, for which Plaintiff has no adequate remedy at law. Unless

enjoined, Defendants will continue the violation, further injuring Plaintiff and confusing the public.

## COUNT SEVEN (Texas Unfair Competition)

76.    Plaintiff repeats and realleges paragraphs 1 through 75 hereof, as if fully set forth herein.

77.    Defendants' unlawful conduct constitutes use of a similar trade name in violation of Texas common law. Plaintiff's trade name and marks have acquired a secondary meaning. The name and mark "BADMAASH" identify a particular producer in the mind of the public, and with that, the reputation, recognition, and goodwill associated with its products and services provided under the BADMAASH Mark.

78.    Defendants' continued attempt to trade on the goodwill and reputation of the BADMAASH Mark and Plaintiff in connection with its products and services is likely to confuse the public as to the affiliation, connection, or association of Defendants with Plaintiff, and as to the origin, sponsorship, or approval of Defendants' unauthorized use, in violation of Texas common law.

79.    Defendants' violation of Texas common law has caused and will continue to cause irreparable damage to Plaintiff, for which Plaintiff has no adequate remedy at law. Unless enjoined, Defendants will continue the violation, further injuring Plaintiff and confusing the public.

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1.    That Defendants have violated Section 32 of the Lanham Act (15 U.S.C. § 1114); and

Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); Section 43(c) of the Lanham Act (15

U.S.C. § 1125(c)), and Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d)).

2.    That Defendants have violated Tex. Bus. & Com. Code § 16.103, and have further engaged

in trademark infringement and unfair competition under Texas common law.

3.    Granting an injunction temporarily, preliminarily and permanently enjoining the

Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates,

subsidiaries, and assigns, and all of those in active concert and participation with any of the

foregoing persons and entities who receive actual notice of the Court's order by personal service

or otherwise from:

a.    providing, selling, marketing, advertising, promoting, or authorizing any third party

to provide, sell, market, advertise, or promote restaurant services bearing the mark

BADMAASH or any other mark that is a counterfeit, copy, simulation, confusingly

similar variation, or colorable imitation of Plaintiff's BADMAASH Mark;

b.    engaging in any activity that infringes Plaintiff's rights in its BADMAASH Mark;

c.    engaging in any activity constituting unfair competition with Plaintiff;

d.    engaging in any activity that is likely to dilute the distinctiveness of Plaintiff's

BADMAASH Mark;

e.    making or displaying any statement, representation, or depiction that is likely to

lead the public or the trade to believe that (i) Defendants' services are in any manner

approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated,

affiliated, or otherwise connected with Plaintiff, or (ii) Plaintiff's goods and/or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Defendants;

f.    using or authorizing any third party to use in connection with any business, goods, or services, any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

g.    registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the mark BADMAASH or any other mark that infringes or is likely to be confused with Plaintiff's BADMAASH Mark, or any goods or services of Plaintiff, or Plaintiff as their source; and

h.    aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (g).

4.    Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's goods and/or services.

5.    Directing Defendants to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale, and/or use of any and all packaging,

labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the mark BADMAASH or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's BADMAASH Mark, and to direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendants' goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing the mark BADMAASH or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Plaintiff's BADMAASH Mark, and to immediately remove them from public access and view.

6.    Directing that Defendants recall and deliver up for destruction or other disposition all goods, packaging, bags, containers, advertisements, promotions, signs, displays, and related materials incorporating or bearing the mark BADMAASH or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Plaintiff's BADMAASH Mark.

7.    Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendants to file with the court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendants of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied therewith.

8.    Ordering Defendants to, within 10 days of the entry of final judgment, transfer to Plaintiff registration of the Infringing Domain Name and registrations of any other domain names owned

or controlled by Defendants that are confusingly similar or dilutive of Plaintiff's BADMAASH Mark (collectively, the "Prohibited Domain Names").

9.      Ordering that the Registrar, upon Plaintiff's request, transfer registration of the Prohibited Domain Names to Plaintiff.

10.     Ordering Defendants to, within 10 days of the entry of final judgment, transfer to Plaintiff control of any other social media handles owned or controlled by Defendants that are confusingly similar or dilutive of Plaintiff's BADMAASH Mark (collectively, the "Prohibited Domain Names").

11.     Awarding, at Plaintiff's election, either an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), or maximum statutory damages in the amount of $100,0000 per domain name found to be in violation of Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d)), in accordance with Section 35(d) of the Lanham Act (15 U.S.C. § 1117(d)).

12.     Directing that Defendants account to and pay over to Plaintiff all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

13.     Awarding Plaintiff punitive and exemplary damages as the court finds appropriate to deter any future willful infringement.

14.     Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

15.     Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

16.    Awarding such other and further relief as the Court deems just and proper.


Dated:   January 16, 2025                    Respectfully submitted,


                                             */s/ James H. Creedon*
                                             James Creedon
                                             Texas Bar No. 24092299
                                             Charles Wallace
                                             Texas Bar No. 24110501
                                             Scale LLP
                                             5 Cowboys Way, Ste 300
                                             Tel. 972.850.6864
                                             Frisco, TX 75034
                                             jcreedon@scalefirm.com


                                             Anna Radke
                                             Brand Counsel, P.C.
                                             401 Park Ave S, 10th Floor
                                             New York, NY 10016
                                             anna@brandcounselpc.com


                                             Manoj Shah
                                             Brand Counsel, P.C.
                                             177 E. Colorado Blvd, 2nd Floor
                                             Pasadena, CA 91105
                                             manoj@brandcounselpc.com


                                             *Attorneys for Downtown Restaurant, Inc.*